UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MELANIE A. DEVOLDER,

                Plaintiff,                            Case No. 14-cv-10624

v                                         Honorable Thomas L. Ludington

RICHARD L. LEE, JR. and MATHIEU & LEE
ATTORNEYS,

                Defendants.

_____/

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
TO DISMISS**

In 2009, Plaintiff Melanie DeVolder retained Defendants to represent her in her divorce proceeding in Midland County Circuit Court. Following the entry of her Judgment of Divorce, DeVolder retained new counsel. She then brought the instant action, alleging that Defendants had committed legal malpractice during their representation and breached an express promise to her.

On March 4, 2014, Defendants filed a motion to dismiss, alleging, *inter alia*, that judicial estoppel precludes an action for malpractice, that they cannot be held liable under the attorney-judgment rule, and that many of DeVolder's substantive claims lack legal merit. Although neither judicial estoppel nor the attorney-judgment rule precludes DeVolder's case in its entirety, the Court will grant Defendants' motion in part regarding several of her substantive claims.

**I**

On August 13, 2009, DeVolder retained Defendants to represent her in her divorce from her husband, Anthony Earl DeVolder.  Compl. ¶ 7.  Defendant Lee, an attorney with Mathieu & Lee Attorneys, PLC, filed an action on behalf of DeVolder in Midland County Circuit Court.

During the representation, DeVolder repeatedly asked for information on her case's progress.  According to DeVolder, Lee would always reply "don't worry" or "I'll handle it." Resp. at 5.  On the day trial was set to being, Lee advised DeVolder to settle her divorce case. As a result, DeVolder entered into a Judgment of Divorce on October 21, 2011.

**A**

On October 21, 2011, DeVolder signed the Judgment of Divorce, which the Midland Circuit Court entered that same day. Pursuant to the Judgment of Divorce, DeVolder would receive $2,000.00 per month in alimony for a period of 36 months, and then $1,000.00 per month for a period of 12 months. Defs.' Mot. to Dismiss Ex. 3 at 2, ECF No. 6. The alimony was to be "non-modifiable as to amount and/or duration" and to terminate upon the earlier of DeVolder's death or forty-eight months. In addition, DeVolder would receive a one-time payment of $15,000.00 following the entry of the Judgment of Divorce.

Concerning the property division, the Judgment of Divorce declared that each party would be entitled to one-half the gross value of: (1) the combined IRA's; (2) Mr. DeVolder's 401(K) plan through State Farm; (3) Mr. DeVolder's pension; and (4) the mutual funds held through State Farm. *Id*. at 3. Moreover, each party was awarded "any and all accounts" already in his or her name. *Id*. at 4. Each party also took responsible for his or her own debts: "Defendant, Anthony Earl DeVolder, shall be responsible for the payment of any debt he has incurred since the filing of the Complaint in this matter and he shall hold the Plaintiff harmless therefrom." *Id*. at 5.

- 2 -

The Judgment of Divorce also provided that "[i]f either party has failed, either intentionally or unintentionally, to disclose any of his or her assets, the issue of property division may be reopened on the motion of either party to determine and resolve the distribution of any previously undisclosed assets." *Id.* at 6. The Midland County Circuit Court "retain[ed] jurisdiction to interpret and enforce any and all provisions contained in this Judgment of Divorce." *Id.*

**B**

Following the entry of the Judgment of Divorce, Lee continued to represent DeVolder until June 2012. After that time, DeVolder retained new counsel, who filed motions seeking to have Mr. DeVolder comply with the terms of the Judgment of Divorce.

On February 10, 2014, DeVolder filed this action against Defendants, alleging more than 50 instances of professional negligence. The allegations range from a failure to undertake proper discovery to failure to keep Devolder properly informed to failure to handle post-judgment matters. DeVolder also alleges that Lee breached an express promise when he told her: "Don't worry, just trust me, it will get handled in the final settlement." Compl. ¶ 16.

**II**

This Court may dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The pleader need not have provided "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his

- 3 -

'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

## A

In support of their motion to dismiss, Defendants rely on the transcript of Devolder's August 1, 2011 testimony in support of the agreement underlying the judgment of divorce. During her testimony, DeVolder allegedly states that she understands the terms of the divorce and is satisfied with the settlement. DeVolder, however, contends that this Court may not consider the transcript of her testimony, claiming that the Court may not consider documents outside the pleadings on a motion to dismiss. Alternatively, DeVolder requests that this Court convert the motion to dismiss into a motion for summary judgment.

A court faced with a Rule 12(b)(6) motion must typically limit its consideration to the pleadings or convert it to a motion for summary judgment under Federal Rule of Civil Procedure 12(d). *Tackett v. M & G Polymers, USA, L.L.C.*, 561 F.3d 478, 487 (6th Cir.2009). However, the Sixth Circuit has held that "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997).

DeVolder's testimony transcript is not, however, a part of the pleadings and therefore cannot be considered with the motion to dismiss. DeVolder did not attach a copy of the transcript to her complaint, nor did she reference her sworn testimony in her complaint. Moreover, the transcript is not central to her claim that Defendants negligently represented her—

- 4 -

although the transcript may be central to Defendants' defense. Because the transcript of DeVolder's testimony was not referred to in her complaint and is not central to her malpractice claims, the Court may not consider the transcript with the motion to dismiss.[1]

But in addition to the general rule—that a document must be referred to in the complaint and central to the claim—the Sixth Circuit has permitted courts to take judicial notice of some documents of public record. *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005). For example, a court may take judicial notice of other court proceedings, including transcripts. *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010).

However, taking judicial notice of documents has been limited to allow only "the use of such documents . . . for the fact of the documents' existence, and not for the truth of the matters asserted therein." *Passa*, 123 F. App'x at 697 (collecting cases). Indeed, judicial notice of public records should only be taken for those records "whose existence or contents prove facts whose accuracy cannot reasonably be questioned. *Id.* That is, the Court "must only take judicial notice of facts which are not subject to reasonable dispute." *Id.*

Here, Defendants are attempting to introduce DeVolder's testimony for the truth of the matters asserted therein—that DeVolder represented to the court in sworn testimony that she was satisfied with the settlement—which is prohibited on a motion to dismiss. According to Defendants,the transcript reveals that, throughout her testimony, DeVolder repeatedly emphasized that she understood the terms of the settlement and wanted to proceed with the settlement. Defendants therefore attempt to rely on these statements to prove that DeVolder is

---

[1] The Court contrasts its decision to decline consideration of the hearing transcripts with its decision to consider the Retainer Agreement and Judgment of Divorce. The Retainer Agreement is referenced—somewhat obliquely—in the Complaint, *see* Compl. ¶ 7, and forms the basis of at least two of DeVolder's substantive claims, *see* Compl. ¶ 13(qq), (xx). The Judgment of Divorce is specifically referenced in the Complaint, *see* Compl. ¶ 9, and also provides the basis for several of DeVolder's claims. Defendants attached both documents as exhibits to their motion to dismiss, and neither party objects to their consideration on the motion. Accordingly, these documents can and will be considered.

estopped from now claiming that she was not familiar with the marital assets or the terms of the Judgment of Divorce.

DeVolder, however, contests the accuracy of her reported testimony. "When considering public documents in the context of a motion to dismiss, a court may not accept a document to decide facts that are in dispute." *In re Cardinal Health Inc. Sec. Litig.*, 426 F. Supp. 2d 688, 713 (S.D. Ohio 2006). Accordingly, DeVolder's testimony is subject to reasonable dispute, and the Court will not take judicial notice of it.

**B**

Defendants contend that DeVolder should be judicially estopped from arguing that her settlement was inadequate. Defendants once again refer to DeVolder's testimony before the Midland County Circuit Court in which she testified that the terms of the settlement were fair. Because DeVolder has already testified that the settlement terms were fair, Defendants contend, she is judicially estopped from now arguing that Defendants misled her into accepting an unfair settlement agreement.

However, as described above, the Court will not consider DeVolder's testimony transcript with Defendants' motion to dismiss. Defendants have not proffered any other reason for dismissing DeVolder's claims based on judicial estoppel. Because the transcript provides the sole basis for Defendants' judicial estoppel argument, that argument may not be addressed on a motion to dismiss.

**C**

Defendants also assert that all of DeVolder's legal malpractice claims are barred by the attorney-judgment rule, an affirmative defense under Michigan law. *Bowman v. Gruel Mills Nims & Pylman, LLP*, 2007 WL 1203580, *4 (W.D. Mich. 2007). "The attorney judgment rule

provides that 'an attorney is obligated to use reasonable skill, care, discretion and judgment in representing a client but is never bound to exercise extraordinary diligence, or act beyond the knowledge, skill, and ability ordinarily possessed by members of the legal profession.'"   *Id.* (citing *Simko* at 656.).

Specifically, the Michigan Supreme Court has explained that "tactical decisions do not constitute grounds for a legal malpractice action."   *Id.* at 848.   Defendants maintain that the recommendation to settle a case falls squarely within the type of "tactical decisions" protected by the attorney-judgment rule.

Defendants correctly point out that the Michigan courts have held that an "attorney's assessment of a settlement opportunity . . . falls squarely within the protections of the attorney-judgment rule."   Defs.' Mot. Dismiss at 17 (citing *Heller v. Donaldson*, 1998 WL 2016612, at *2 (Mich. Ct. App. Mar. 13, 1998) and *Woods v. Gursten*, 1998 WL 1988581, at *3 (Mich. Ct. App. Dec. 15, 1998)).   However, there is a difference between an attorney's assessment of a settlement opportunity on the one hand and not advising a client properly about applicable principles of law and the impact of a settlement agreement upon the substantive rights and obligations of the client.   The former would be protected by the attorney-judgment rule while the latter would not. The instance case involves the latter: DeVolder claims that Defendants failed to inform of her the consequences of settling her divorce, and she therefore had to rely on incomplete information in accepting the terms of the settlement agreement.   A lawyer who negligently advises a client concerning the effect of a settlement agreement is not entitled to protection under the attorney-judgment rule.

**D**

- 7 -

Defendants next claim that DeVolder is not entitled to contest the terms of the Judgment of Divorce because she signed it and is therefore charged with knowing the contents of the document.

As Defendants correctly contend, Michigan courts have repeatedly held that "one who signs a contract will not be heard to say, when enforcement is sought, that he did not read it, or that he supposed it was different in its terms." *Farm Bureau Mut. Ins. Co. of Michigan v. Nikkel*, 596 N.W.2d 915 (1999). In other words, a signatory is presumed to know the nature of the instrument he or she is signing. *Watts v. Polaczyk*, 619 N.W.2d 714 (2000).

Defendants thus argue that, because DeVolder signed the Judgment of Divorce, she cannot now argue that she does not approve of its contents. For example, in her complaint, DeVolder alleges that Defendants failed to properly "value Mr. DeVolder's retirement accounts"; "value all marital real estate"; "value all marital personal property"; and "have the marital estate/assets appraised." Compl. ¶ 13(b)(c-f).

Each of these allegations is specifically addressed in the Judgment of Divorce. Under the heading "Retirement/Pension", DeVolder agreed to accept "one half the gross value of the combined IRA's of the Plaintiff and the Defendant" and "one half of the value of the Defendant's 401(K) Plan." Judgment of Divorce at 3. Moreover, regarding much of the personal property, the Judgment of Divorce memorialized the fact that DeVolder and her ex-husband had already divided much of the property between themselves. *See* Judgement of Divorce at 3 ("Defendant shall be awarded whatever personal property is currently in her possession . . ."); ("the parties have already divided the mutual funds held through State Farm with each party receiving one half thereof . . . .").

DeVolder claims that she should not be charged with knowledge of the contents of the Judgment of Divorce because she signed it under coercion from Defendants.  She alleges that Defendants "refused to go to Trial and insisted the Plaintiff settle her case on the threat that she would not get any support if she didn't settle . . . ."  Compl. ¶ 13 (dd).  Therefore, she contends, her approval of the Judgment of Divorce was the result of Defendants' coercion and should not bar her suit.

"The law is clear that one who signs an agreement, in the absence of coercion, mistake, or fraud, is presumed to know the nature of the document and to understand its contents . . . ." *Clark v. DaimlerChrysler Corp.*, 706 N.W.2d 471, 475 (Mich. Ct. App. 2005).  In Michigan, coercion is generally viewed as a defense to a claim of contract formation or enforcement. *Miller v. CVS Pharmacy, Inc.*, 779 F. Supp. 2d 683, 688 n.4 (E.D. Mich. 2011).  Coercion requires that one be "illegally forced to act by fear of serious injury to person, reputation or fortune.  Fear of financial ruin alone is insufficient to establish economic duress; it must also be established that the person applying the coercion acted unlawfully."  *Harvard Drug Group, LLC v. Linehan*, 684 F. Supp. 2d 921, 926 (E.D. Mich. 2010).

Here, DeVolder is not alleging that Defendants acted illegally; rather she contends that they refused to represent her at trial and negligently represented her during the settlement of her case.  Because DeVolder has not alleged that Defendants acted illegally, as required to show coercion, she cannot use coercion as a defense to her signing the Judgment of Divorce.  Accordingly, claims 13(c-f and oo) of the Complaint will be dismissed.[2]

---

[2] Defendants contend that, in addition to these claims, the Court should also dismiss claims ¶ 13(o), which alleges that Defendants "did not explain to Plaintiff the difference between modifiable and non-modifiable support."  The Court will not dismiss this claim, however, because the plain terms of the Judgment of Divorce do not illustrate that Plaintiff understood the difference.  Accordingly, Defendants may still be liable for failure to inform DeVolder of the difference and consequences of each type of support before she signed the Judgment of Divorce.

In addition to challenging the provisions included in the Judgment of Divorce, DeVolder also alleges a number of instances in which the settlement agreement *failed* to secure several provisions that she suggests were available to her. *See* Compl. ¶ (p) (failure to negotiate modifiable support); (q-u) ("failure to obtain proper support" and to "properly calaculate support amount and duration"). DeVolder's allegations are succinctly summarized by her claim that Defendants were negligent by allowing her to agree "to improper and insufficient language in the Judgment of Divorce . . . ." Compl. ¶ 13(kk). Although DeVolder is presumed to have read the Judgment of Divorce, she cannot be presumed to have knowledge of issues that were *omitted* from the Judgment. For example, how could DeVolder have knowledge that the Judgment of Divorce failed to negotiate modifiable support if she did not know that her husband was willing to agree to modifiable support or that the court was likely to provide modifiable support in an equal amount? Thus, DeVolder will not be charged, in the context of the Defendants' motion to dismiss, with knowledge of the issues unaddressed by the Judgment of Divorce simply by virtue of having signed the Judgment.

## E

Defendants next contend that violation of the Michigan Rules of Professional Conduct do not give rise to a civil liability, and therefore DeVolder's claim that Defendants "violated the Michigan Rules of Professional Conduct (MRPC); including, but not limited to: 1.1, 1.3, 1.4, 1.5 and 5.1," Compl. ¶ 13(ww), should be dismissed.

An attorney has a responsibility to follow the rules of professional conduct, which are generally based on ethical principles. *Watts v. Polaczyk*, 619 NW2d 714 (2000). However, while failure to comply with the obligations of a rule of professional conduct may provide grounds for invoking the disciplinary process, such failure will not give rise to a cause of action

to enforce the rule or for damages caused by failure to abide by the rule. *Watts* at 607 n 1. "The Michigan Rules of Professional Conduct are not laws, but merely establish guidelines to be used in state disciplinary proceedings. The Rules are not binding on the courts in any judicial proceeding." *Upjohn Co. v. Aetna Cas. and Sur. Co.*, 768 F. Supp. 1186, 1214 (W.D. Mich. 1990); *see also Scott v. Bank of America*, 2013 WL 5352959, at*11 (E.D. Mich. Sept. 24, 2013). Indeed, the MPRC itself explicitly denies that there is a cause of action based on violation of the rule: "The rules do not, however, give rise to a cause of action for enforcement of a rule or for damages caused by failure to comply with an obligation or prohibition imposed by a rule." MRPC 1.0(b); *see also* Comment ("[The rules] are not designed to be a basis for civil liability."). Because violation of the MRPC cannot be the basis of an independent claim for liability, DeVolder's claim that Defendants violated the MRPC, Compl. ¶ 13(ww),[3] will be dismissed as an independent cause of action.[4]

**F**

Defendants next contend that, with respect to several allegations in the complaint, DeVolder cannot establish that she suffered an injury,[5] as required for a successful malpractice claim. In her complaint, DeVolder makes several allegations that Defendants failed to fully investigate the extent the parties' marital assets:

> [Defendants] failed to undertake proper discovery during the pendency of the divorce in regards to assets of the marital estate including, but not limited to:

---

[3] Defendants also claim that paragraphs 13(j-m) should also be dismissed for this reason. However, these paragraphs do not allude specifically to the MRPC, and therefore this Court will not dismiss them.

[4] DeVolder contends that her claim for violation of the MRPC should not be dismissed because she intends to use the MRPC as evidence of the standard of care for her negligence claims. In its decision, the Court is not precluding DeVolder from introducing the MRPC as evidence of the standard of care; rather, it is clarifying that a violation of the MRPC is not an independent legal claim.

[5] In their brief, Defendants contend that DeVolder cannot establish *causation* with respect to these allegations. However, Michigan courts have analyzed similar claims as a lack of injury rather than a lack of causation. Accordingly, this Court will construe Defendants' arguments as ones for lack of injury.

    i)        all financial account, retirement account, employment and wage documents regarding Mr. DeVolder's past, present and future earnings and holdings;

    ii)      identify assets/funds missing from marital checking and savings accounts;

    iii)     have all marital assets inventoried/valued;

    iv)     discover assets improperly removed/converted by Mr. DeVolder;

    v)      ascertain/document improper charges/credit obtained by Mr. DeVolder;

    vi)     obtain a verified accounting as to goods auctioned off by Mr. DeVolder; and

    vii)    determine Mr. DeVolder's new employment earnings and/or earning capacity and other failures to be determined/discovered . . . .

Compl. ¶ 13(b); *see also* Compl. ¶ 13(g) ("[Defendants] failed to locate or value marital and/or personal assets which Mr. DeVolder wrongfully converted").

Defendants maintain that, even if these allegations are taken as true, DeVolder has an available remedy: she can reopen the divorce case. The Judgment of Divorce explicitly permits DeVolder to reopen the issue of property division "[i]f either party has failed, intentionally or unintentionally, to disclose any of his or her assets." Ex. 2 p. 6. Defendants thus contend that because DeVolder can reopen the issue of property division at any time, there is no legal injury.

Defendants' argument finds support in Michigan caselaw. In *Bourke v. Warren*, the Michigan Court of Appeals held that, where a plaintiff has an available remedy, the plaintiff has not suffered an injury that would give rise to a malpractice claim. 325 N.W.2d 541 (1982). In *Bourke*, a plaintiff/client brought a malpractice action against his attorney. Although the attorney's negligence prevented his client from proceeding against two possible defendants, the claim was not completely lost because the client could still proceed against another defendant. The Michigan Court of Appeals thus concluded that the plaintiff had not suffered an injury

- 12 -

because the plaintiff had an available remedy, and the attorney could not be held liable for negligence.

Here, DeVolder has an available remedy even if Defendants did not adequately identify all of the marital assets.  The Judgment of Divorce expressly permits her to reopen the case, and the availability of this remedy means she cannot show that she suffered an injury. And contrary to DeVolder's protests, DeVolder would not be obligated to seek Relief from Judgment because the state court judge expressly retained jurisdiction: "the Court shall retain jurisdiction to interpret and enforce any and all provisions contained in this Judgment of Divorce."  Judgment of Divorce at 6.  Accordingly, DeVolder's claims for malpractice based on Defendants' alleged failure to investigate assets, Compl. 13(b), (g) (n), and (hh), will be dismissed.[6]

## G

Similar to their previous argument, Defendants contend that DeVolder cannot prevail on her claim that Defendants "improperly allowed Mr. DeVolder to increase [joint] credit card debt which was required then be[sic] paid by Plaintiff" because she did not allege that she suffered an injury.  Compl. ¶ 13(pp).  The Judgment of Divorce provides that Mr. DeVolder "shall be responsible for the payment of any debt he has incurred since the filing of the Complaint in this matter and he shall hold [Ms. DeVolder] harmless therefrom."  Ex. 2 p. 5.  In other words, according to the explicit terms of the Judgment of Divorce, DeVolder is not responsible for her ex-husband's increased credit card debt.

DeVolder counters that she has nonetheless been held responsible for the increased credit card debt by the credit card issuers, and therefore she has alleged an injury.  She maintains that

---

[6] Defendants also contend that this Court should dismiss claim ¶ 13(gg), alleging that Defendants "failed to have a Trial rather than agree to an unfair and improper Judgment." The focus of this allegation is Defendants' negligence in recommending settlement, however, not the failure to identify assets.

Defendants should have secured an order from the state court closing the joint accounts to new charges so that the credit card issuers would not seek payment from her.

Although the credit card issuers may indeed be seeking payment from DeVolder, the terms of the Judgment of Divorce make clear that her ex-husband—*not* DeVolder—is responsible for the debt: "Defendant, Anthony Earl DeVolder, shall be responsible for the payment of any debt he has incurred since the filing of the Complaint in this matter and he shall hold the Plaintiff harmless therefrom." Judgment of Divorce at 5. And the Complaint suggests that Mr. DeVolder is capable of paying the credit card obligation: Defendants "failed to obtain at least a 50/50 distribution of the marital estate." Compl. ¶ 13(hh).

Because the Judgment of Divorce terms make clear that Mr. DeVolder is responsible for any debt he incurs, DeVolder must, at the very least, plead that she has attempted to enforce the Judgment's terms. Pursuant to the Judgment of Divorce, she has an available remedy if she is improperly held liable for Mr. DeVolder's debts—she can pursue indemnity from Mr. DeVolder. But because she has not pleaded that she has even attempted to pursue such a remedy, she has not suffered an injury. Accordingly, DeVolder's claims for malpractice based on Defendant's alleged failure to prevent her ex-husband from increasing his credit card debt, Compl. 13(pp), is dismissed.

## H

Defendants next contend that the fee agreement with DeVolder was not "improper" or "excessive" because non-refundable retainers are permissible in Michigan.

In *Grievance Adm'r v. Cooper*, the Michigan Supreme Court held that, a non-refundable retainer is permissible so long as the fee agreement memorializing the retainer is unambiguous. 757 N.W.2d 867, 867 (Mich. 2008). Although subsequent decisions by other courts and

secondary literature question the propriety of allowing non-refundable retainers,[7] they are nonetheless permissible under Michigan law.

DeVolder's Retainer Agreement expressly provides that:

It is UNDERSTOOD AND AGREED that, for his services, said attorney shall be paid as follows.

1.      There shall be a **MINIMUM ATTORNEY FEE** of $3,000.00, which shall be paid either:

   a.      Simultaneously upon execution hereof; or
   b.      By a **RETAINER FEE** of $2,000.00, due immediately upon the execution hereof, with the balance to be paid at the rate of $N/A per month.

Retainer Agreement 1 (emphasis original). The Retainer Agreement also provides that "***There is no refund on retainers**." *Id.* at 2 (emphasis original).

The terms of the Retainer Agreement are clear and unambiguous: the $2,000 retainer fee is non-refundable. And because an unambiguous non-refundable retainer is permissible under Michigan law, DeVolder's claim that Defendants "asked Plaintiff to enter into an improper fee agreement regarding non-refundable retainers," Compl. ¶ (qq) and (xx), will be dismissed.

## I

Defendants contend that DeVolder's claim for breach of an express promise is duplicative of her legal malpractice claim, and should therefore be dismissed. "Michigan law is clear that a plaintiff cannot prevail on a claim for breach of contract where the alleged facts support a claim for legal malpractice." *McKenzie v. Berggren*, 99 F. App'x 616, 620 (6th Cir. 2004) (citing *Aldred v. O'Hara-Bruce*, 458 N.W.2d 671, 673 (Mich. App. 1990)). Furthermore,

---

[7] *See, e.g.,* Douglas R. Richmond, *Understanding Retainers and Flat Fees*, 34 J. Legal Prof. 113, 131 (2009):
  *Cooper* is a difficult case to understand because the decision is so cursory. Courts and lawyers generally understand that a "minimum fee" refers to some sort of advance fee—most likely a security retainer. If that is the situation here, then it is possible that non-refundable security retainers oddly pass professional responsibility muster in Michigan . . . .

the "*Aldred* case has also been interpreted by the Michigan courts as holding that the only claim that may be brought against one's attorney for inadequate legal services is a claim for legal malpractice." *Id.* at 620-21 (citing *Melody Farms, Inc. v. Carson Fischer, PLC*, 2001 WL 740575, at *5 (Mich. Ct. App. Feb. 16, 2001).

DeVolder's claim for breach of an express promise is duplicative of her malpractice claim. DeVolder alleges that "Defendant's breach of express promise to 'handle' Plaintiff's matter correctly, fairly, equitably and satisfactorily has proximately caused Plaintiff to settle her matter in an incorrect, unfair, inequitable and unsatisfactory manner . . . ." Compl. ¶ 21. In other words, DeVolder is claiming that Defendants failed to represent her adequately, and therefore her claim is grounded in malpractice. Because DeVolder has alleged facts that support her claim for legal malpractice, her claim for beach of an express promise is duplicative and will be dismissed.

### III

Accordingly, it is **ORDERED** that Defendants' Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**. Claims 13(b-g), (n), (hh), (oo), (pp), (qq), (ww), and (xx) of Count 1 – Legal Malpractice are **DISMISSED**. In addition, Count 2 – Breach of Express Promise is **DISMISSED** in its entirety.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: August 21, 2014

- 16 -

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 21, 2014.

s/Tracy A. Jacobs
TRACY A. JACOBS