UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MELANIE A. DEVOLDER,

                    Plaintiff,                        Case No. 14-cv-10624

v                                      Honorable Thomas L. Ludington

RICHARD L. LEE, JR, et al.,

                    Defendants.

_____/

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,
DENYING MOTION TO STRIKE EXPERT WITNESS
AND DENYING AS MOOT MOTIONS IN LIMINE**

      In 2009, Plaintiff Melanie DeVolder retained Defendants to represent her in her divorce action in Midland County Circuit Court. Following the entry of her Judgment of Divorce on October 21, 2011, DeVolder retained new counsel to address post-judgment matters. She then brought the instant action on February 10, 2014, alleging that Defendants had committed legal malpractice representing her during the divorce case as well as having breached a promise to her. DeVolder's breach of implied promise claim was dismissed on a motion to dismiss as duplicative of her legal malpractice claim under Michigan law, and her remaining claim of legal malpractice proceeded to discovery. *See* ECF Nos. 15, 22.

      On July 31, 2015, Defendants filed two motions. In the first, Defendants move to strike the expert witness testimony of Rebecca Tooman. ECF No. 28. In the second, Defendants move for summary judgment on DeVolder's remaining allegations. ECF No. 29. Based on the following, Defendants motion to exclude the expert testimony of Rebecca Tooman will be denied. Defendant's motion for summary judgment will be granted.

**I**.

**A.**

Plaintiff Melanie A. DeVolder married her now ex-husband on May 31, 1986. *See* Pl. Br. in Resp. to Mot. for Summ. J. 1 [hereinafter Pl.'s S.J. Resp.]. The couple had two sons. *Id*. The first was born in 1988 and the second was born in 1990. *Id*.

Plaintiff DeVolder earned an Associate Degree in Nursing in 1987, and worked as a full time labor and delivery nurse until approximately 1994. *Id*. She then worked only part time until 1996. *Id*. DeVolder resumed working as a Hospice Nurse during the winter of 2008, but only for around 8 to 10 hours a week. DeVolder then began working full time in 2009. During 2009, Plaintiff DeVolder earned $28,225 in income. She made around $39,109 in 2010.

Mr. DeVolder worked for State Farm. During the year of 2009, Mr. DeVolder earned just over $200,000 working in State Farm's executive office. *Id*. at Ex. 3 at 58-59. In April of that year, Mr. DeVolder was informed that he would be terminated at the end of the 2009 calendar year because he was missing too many days of work. *Id*. Mr. DeVolder was then given the opportunity to take a position as an executive agent with State Farm, which he accepted. *Id*. at Ex. 3 pp. 59-60. Following his move to the agency position, Mr. DeVolder earned around $115,000 in 2010. *Id*. at Ex. 3. 65.

Throughout their marriage, Plaintiff explains, Mr. Devolder and Plaintiff had an active, albeit somewhat deviant sexual life. DeVolder alleges that this aspect of the relationship was partially responsible for the eventual breakdown of the marriage. As a result of their sexual practices Plaintiff DeVolder contends she suffered, and continues to suffer from a variety of physical, mental and emotional health problems.

**B.**

DeVolder left her husband on around July 8, 2009, and retained Defendants Richard L. Lee, Jr. and his firm, Mathieu & Lee Attorneys, PLC, in August 13, 2009 to file a separate-maintenance action. *See* Def.'s Mot. for Summ. J. Ex. 2 pp. 55-58, ECF No. 32 [Hereinafter Def.'s S.J. Mot.]; Compl. ¶ 7. Defendants filed the action in Midland County Circuit Court, and the case was assigned to Judge Jonathan E. Lauderbach. Compl. ¶ 8. Mr. DeVolder, represented by William Brisbois, answered and filed a counter-complaint for divorce.

After the initial filing, Mr. DeVolder removed Plaintiff's name from their mutual accounts. *See* Def.'s S.J. Mot. Ex. 2 at. 69-70. In response, Defendant Lee filed a Petition for Relief with the Court on January 22, 2010. *Id. See also* Def.'s S.J. Mot. Ex. 6. DeVolder was awarded $10,000 as a result of this motion. *See* Def.'s S.J. Mot. Ex. 7.

On January 14, 2010 Defendant Lee filed a petition for temporary alimony during the pendency of the case on behalf of Plaintiff DeVolder. *See Id.* at Ex. 4. The court denied the petition on February 16, 2010 on the grounds that Plaintiff DeVolder was gainfully employed. *See Id.* at Ex. 5.

The parties sold their marital home around May of 2010. Pl.'s S.J. Resp. Ex. 3 p. 12. There was a large mortgage on that property, and so Plaintiff DeVolder claims she only recovered $4,000 from that sale. *Id.* In December of 2010, Plaintiff DeVolder purchased a condominium in Noblesville, Indiana with proceeds from the sale of mutual funds. *Id* at 11. She lived in Indiana throughout the divorce proceedings.

In October of 2010, while the divorce proceedings were pending, Plaintiff DeVolder underwent an ileostomy procedure.[1] *See* Pl.'s S.J. Resp Ex. 3 p. 175. The parties agreed that the surgery was necessary, and was likely a result of the parties' sexual practices. *Id.* at Ex. 17 13.

---

[1] An ileostomy is a surgical procedure in which the lowest portion of the small intestine is brought through the abdominal wall to create a stoma, or artificial opening, "through which the intestinal contents can discharge, thus

On July 21, 2011 Plaintiff DeVolder sent an email to Defendant Lee expressing concern about the progress of the divorce proceedings. *Id*. at Ex. 13. In that email, DeVolder explained that she was not seeking medical expenses, but just wanted Mr. DeVolder to pay for her out-of-network Psychologist Harvey Power's expenses, her attorneys' fees, and her next month of special physical therapy. *Id*. Ms. DeVolder also thanked Defendant Lee for his efforts. *Id*.

### C.

The case was scheduled for trial on August 1, 2011. When the parties arrived on that date, they began active settlement discussions. *Id.* at Ex. 17 37-38. Alimony was the primary obstacle in reaching a settlement. *See* Pl. S.J. Resp. p. 5. Plaintiff DeVolder was concerned about future medical and insurance payments. Pl. S.J. Resp. p. 4. Plaintiff was paying out-of-network Psychologist Harvey Powers around $1,500 a month to treat PTSD that she contends resulted from her marriage. *Id*. She was also concerned about additional surgeries she needed to have as a result of the parties' sexual practices. *Id*. at Ex 17 p. 17. Mr. DeVolder did not want to pay any alimony. *See* Def.'s S.J. Mot. Ex. 12 p. 76-77. With assistance from Judge Lauderbach, the parties reached a negotiated settlement agreement on that date that awarded Plaintiff DeVolder non-modifiable monthly alimony for a period of four years. *See* Pl. S.J. Resp. p. 5.

After the parties informed Judge Lauderbach that they had reached a settlement, a divorce hearing was held. At that hearing on questioning from Defendant Lee, DeVolder testified as follows:

> Q: Okay. Now, we have put on the record a rather detailed settlement. Do you understand that settlement?
>
> A: Yes, I do.

---

bypassing the colon." Oxford Concise Medical Dictionary (9th ed. 2015). The operation may be performed following injury to the colon. *Id*.

Q: And we've gone back and forth this morning and you've had my advice and the advice of some other people too; is that correct?

A: That's correct.

Q: You understand the terms of the alimony and that that's all you're ever going to get. It's forever barred after that. You understand that?

A: Correct.

Q: Can't be changed up or down or length or anything else?

A: Correct.

Q: Okay, and you understand the terms of the property settlement, the 401(k) and the IRA and the mutual funds and all that?

A: That's correct.

Q: Is that correct? And we've settled on a figure of $15,000 that Mr. DeVolder is going to pay you. And you understand how we arrived at that figure; is that right?

A: Correct.

Q: And you're – you're satisfied with that?

A: Correct.

Q: It may not be everything you wanted, but you understand there's give and take here; is that correct?

A: Yup.

Q: And with regards to the attorney fees and the costs, we have talked about that and factored that into the settlement also; is that correct?

A: That's correct.

Q: Okay. Now you understand that you could have gone to trial here today. You know that, Melanie?

A: Yes.

Q: And if you had gone to trial, you might have gotten more, you might have gotten less.  You understand that?

A: Correct.

Q: Now you've talked to myself and also your therapist and we realize that – the consequences of going to trial. You took that into consideration in making a settlement here; is that correct?

A: That is correct.

Q: Okay. And you think that is best for you in order to accept this settlement rather than to go to court and have the Judge make the decision; is that right?

A: Yes.

Q: This is a settlement that you and Tony have reached and you're comfortable with it. You didn't get everything you wanted, but you're comfortable with it; is that right?

A: Yes.

*See* Def.'s S.J. Motion Ex. 15 9-14.   Based on this testimony and his consultation with the attorneys, Judge Lauderbach found the settlement agreement fair and equitable to both parties. *Id*. at 15.

On October 21, 2011, DeVolder signed the Judgment of Divorce that reflected the terms of the settlement agreement. Pl.'s S.J. Resp. Ex. 9.   The Midland Court entered the judgment that same day. *Id*.   Pursuant to the Judgment of Divorce, DeVolder was to receive $2,000.00 per month in alimony for a period of 36 months, and then $1,000.00 per month for a period of 12 months. *Id*. at 2.   The alimony was to be "non-modifiable as to amount and/or duration" and to terminate upon the earlier of DeVolder's death or forty-eight months. *Id.* In addition, DeVolder would receive a one-time payment of $15,000.00 following the entry of the Judgment of Divorce. *Id.* at 4.

Concerning the property division, the Judgment of Divorce declared that each party would be entitled to one-half the gross value of: (1) the combined IRA's; (2) Mr. DeVolder's 401(K) plan through State Farm; (3) Mr. DeVolder's pension; and (4) the mutual funds held

through State Farm. *Id*. at 3.   Each party was awarded any and all accounts already in his or her name, and each party also took responsibility for his or her own debts.  *Id*. at 4-5.

The Judgment of Divorce also provided that "[i]f either party has failed, either intentionally or unintentionally, to disclose any of his or her assets, the issue of property division may be reopened on the motion of either party to determine and resolve the distribution of any previously undisclosed assets." *Id*. at 6. The Midland County Circuit Court "retain[ed] jurisdiction to interpret and enforce any and all provisions contained in this Judgment of Divorce." *Id*.

### D.

Following the entry of the Judgment of Divorce, Lee continued to represent DeVolder until June 2012.  After that time, DeVolder retained Attorney Rebecca Tooman to address the unresolved post-judgment matters.   Attorney Tooman filed motions seeking to have Mr. DeVolder comply with the terms of the Judgment of Divorce.

Since the divorce, Plaintiff DeVolder has experienced financial problems.  She continues to engage out-of-network Psychologist Harvey Powers, whose expenses usually amount to $1,000 a month.  She sold her Indiana condominium in July of 2012 to cover her expenses, and moved to Colorado where she currently lives with a friend. Pl.'s S.J. Resp. Ex. 3 p. 10-13.

Plaintiff DeVolder has also undergone a number of major surgeries. She underwent a bladder implant in 2012, and had a takedown of her former ileostomy in March of 2013. Most recently, she had surgery to divert her bladder to her umbilicus in January of 2014. Plaintiff alleges that all of the surgeries were necessary because of sexual practices during the marital relationship. *Id*. at 21.

As a consequence of the January, 2014 surgery, DeVolder was let go from her position with Visiting Nurse Association on February 10, 2010. *Id*. She remained unemployed until October of 2014, at which time she began working for Abode Hospice in October. *Id*. At the time of her deposition, she was working for Adobe Hospice on an as-needed basis. *Id*.

On February 10, 2014, the same day she was terminated from her position with Visiting Nurse Association, DeVolder filed this action against Defendants, alleging factually more than 50 instances of professional negligence. The allegations range from a failure to undertake proper discovery to failure to keep Devolder properly informed to failure to handle post-judgment matters. Pursuant to Defendants' motion to dismiss, 19 of DeVolder's breach of professional duty allegations were dismissed. *See* ECF No. DeVolder also brought a claim for breach of a promise, which was also dismissed upon Defendants' motion to dismiss. *Id*. Defendants now move for summary judgment on DeVolder's remaining claims.

## II.

As an initial matter, Defendants move to strike the expert witness testimony of Plaintiff's expert, Attorney Rebecca Tooman. *See* Def.'s Mot. to Strike, ECF No. 28. Defendants specifically argue that Attorney Tooman is not qualified to offer expert testimony on this case, and that Attorney Tooman's opinions are not relevant or reliable. This motion will be denied.

## A.

An inquiry into the admissibility of expert testimony begins with Federal Rule of Evidence 702. The rule was amended in 2000 to reflect the Supreme Court's emphasis in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), on the trial court's gate-keeping role in the admission of evidence. The

amended rule, together with those cases, requires that a trial court determine whether a proffered expert's opinion has foundational relevance and reliability.  The rule provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

*Id*.  It is therefore the role of the trial judge to determine whether proffered expert testimony meets these criteria before it may be presented to a jury. *Kumho Tire*, 526 U.S. at 158.

**B.**

Attorney Rebecca Tooman graduated from Wayne State University Law School in 2007 and passed the Michigan bar that same year.  Pl.'s Strike Resp. Ex. 1 p. 6.  Since then, she has worked for eight years in the field of family law.  She began working for the Marie Pulte law firm, where she had clerked for two years during law school. *Id*. The firm exclusively handles family law matters, including divorce cases. *Id*. at 7.   During her time with her firm, Attorney Tooman served as co-counsel with Marie Pulte on a number of divorce matters, including three or four divorce trials and numerous divorce evidentiary hearings. *Id*. at 11.

Attorney Tooman remained with the Marie Pulte firm until July 25, 2014, and then started her own law practice, Innovate Law Services.  *Id*. at 8-9.  About 90 percent of her clients have family law matters and 10 percent have estate planning matters. *Id*. at 11.   Attorney Tooman has never handled a divorce case on her own, and has never been retained as an expert on any other matter. *Id*. at 12.

Attorney Tooman has experience in the area of family law mediation.  She received civil mediation training at Wayne State while she was in law school. *Id*. at 13.  She then took training for domestic relations with Zena Zumeta around 2010, and has since served as both a mediator and facilitator in a number of matrimonial cases. *Id*.  She facilitated around five cases with Marie Pulte, and at least one or two after beginning her own practice. *Id*. at 14.

Attorney Tooman remains involved with numerous family law organizations.  These include the Family Mediation Council, the Family Law Advisory Board, and the Michigan Inter-Professional Association on Divorce, Marriage and the Family. *Id*. at 14; Pl.'s Strike Resp. Ex. 2.  She is also a member of both the Okaland County Bar Association and the Wayne County Bar association. *Id*.

She also has scholarly experience in the field.  She has published at least two articles in the area of family law. Pl.'s Strike Resp.Ex. 2.  She also taught a seminar on insurance and mediation at an annual ADR meeting. *See* Pl.'s Strike Resp. Ex. 1 p.15. She regularly attends both ADR seminars and ICLE webinars. *Id*. at 15-16.

## C.

Defendants argue that Attorney Rebecca Tooman is not sufficiently qualified "by knowledge, skill, experience, training, or education" as required by the rule. Fed. R. Evid. 702.  With regard to qualifications, a court should focus its inquiry on whether the expert's knowledge of the subject matter is such that her opinion "will likely assist the trier of fact in arriving at the truth." *Mannino v. International Mfg. Co.*, 650 F.2d 846, 851 (6th Cir. 1081).

Defendants allege Attorney Tooman is not qualified because she could not articulate the definition for standard of care as it relates to professional responsibility.  However, the Sixth

Circuit addressed this issue in *Davis v. Combustion Eng'g, Inc.*, 742 F.2d 916, (6th Cir. 1984), explaining:

> Rule 702 should be broadly interpreted on the basis of whether the use of expert testimony will assist the trier of fact. The fact that a proffered expert may be unfamiliar with pertinent statutory definitions or standards is not grounds for disqualification. Such lack of familiarity affects the witness' credibility, not his qualifications to testify.

*Id.* at 919. Accordingly, failure to recite a specific legal definition is not grounds for disqualifying Attorney Tooman from testifying.

Defendants also argue Attorney Tooman's opinions are not relevant or reliable. This argument primarily rests on Defendants' contention that Attorney Tooman did not review Defendant Lee's complete file in preparation for her deposition. This argument is also, without more, without merit. It is not clear from the parties' papers that Attorney Tooman did not review the complete file or understand what compromised the complete file. Moreover, Defendants would have an opportunity to cross-examine her on this point at trial. As the Supreme Court noted in *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. For these reasons, Defendants' motion to strike the expert witness testimony of Attorney Rebecca Tooman will be denied, and the Court will consider her testimony in deciding Defendants' remaining motion.

### III.

Defendants also move for summary judgment on Plaintiff DeVolder's remaining allegations of negligent professional malpractice. A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has

the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted).

The Court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts…. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Plaintiff DeVolder's remaining claims arise under a theory of legal malpractice. To establish a prima facie case of legal malpractice, the plaintiff must prove: "(1) the existence of an attorney-client relationship; (2) negligence in the legal representation of the plaintiff; (3) that the negligence was a proximate cause of an injury; and (4) the fact and extent of the injury alleged." *Simko v. Blake*, 448 Mich. 648, 655; 532 NW2d 842 (1995).

### A.

Defendants first contend that DeVolder should be judicially estopped from arguing that her settlement was inadequate. In *Paschke v. Retool Industries,* the Michigan Supreme Court adopted the "prior success" model of judicial estoppel. 445 Mich. 502, 509-10 (Mich. 1994). Under the "prior success" doctrine, "a party who has successfully and unequivocally asserted a position in a prior proceeding is estopped from asserting an inconsistent position in a subsequent

proceeding." *Id.* (emphasis omitted) (citations omitted).  The *Paschke* court explained that "the mere assertion of inconsistent positions is not sufficient to invoke estoppel; rather, there must be some indication that the court in the earlier proceeding accepted that party's position as true." *Id.* Importantly, for the doctrine of judicial estoppel to apply under Michigan law, the claims must be "wholly inconsistent." *Id.* at 10.

### i.

The Michigan Court of Appeals applied this analysis to a family law case in *Opland v. Kiesgan*, 594 N.W.2d 505 (Mich. Ct. App. 1999).  There, the Michigan Court of Appeals explained that judicial estoppel is an equitable doctrine to be invoked at the discretion of the Court with the purpose of protecting "the integrity of the judicial process." *Id.* at 3654 (internal citations and quotations omitted).  The *Opland* Court further directed that judicial estoppel is an "extraordinary remedy to be invoked when a party's inconsistent behavior will otherwise result in a miscarriage of justice. It is not meant to be a technical defense for litigants seeking to derail potentially meritorious claims." *Id.* at 364.  Instead, the doctrine should only apply to situations where the 'risk of inconsistent results with its impact on judicial integrity is certain." *Id.* The applicability of the doctrine therefore depends on the particular facts and circumstances of each case. *Id.*

In applying the doctrine, Michigan Courts consider whether parties are deliberately attempting to manipulate the courts. *See, e.g. Hill v. Hill*, 2013 WL 6508815 (Mich. Ct. App. 2013). Michigan courts also consider whether a party is attempting to "invoke the authority of a second tribunal to override a bargain made with a prior tribunal." *Opland*, 594 N.W.2d at 512 (internal citations and quotations omitted).

In support for their argument that judicial estoppel is applicable to the present case, Defendants emphasize *Snyder v. Finn*, WL 2016579 (Mich. Ct. App. 1998).  There, after a plaintiff's divorce action was resolved by a consent judgment, the plaintiff brought a legal malpractice action against the attorney who had represented her in the divorce action. *Id.* at 1. The plaintiff alleged that her former attorney had breached the professional duties owed to her and that he had failed to negotiate a fair and equitable property settlement, largely due to his failure to ascertain the extent and value of the parties' assets.  *Id.* The former attorney filed a motion for summary judgment, claiming that judicial estoppel barred the malpractice claim. *Id.* Specifically, the attorney alleged that the plaintiff's testimony at the divorce settlement hearing barred the later action:

> Plaintiff testified at the underlying divorce settlement hearing that she understood that the consent judgment itself contained language indicating it to be a fair judgment, that she herself believed that the judgment represented a fair disposition of the divorce action, and that she was aware that further discovery of marital assets could be had, but that she did not want to proceed with further discovery. Plaintiff responded appropriately at the hearing in the underlying action, acknowledged that she had gone over six or seven drafts of the agreement with her attorney, and agreed that her former spouse would receive the corporate and partnership assets, including Mooney Oil Corporation, along with the stocks, mutual funds and bonds. Plaintiff suggested at the hearing that she wanted to get the divorce over with and indicated that she considered the matter extremely private.

*Id.* Based on this testimony, the Michigan Court of Appeals concluded that Plaintiff's subsequent malpractice action was judicially estopped. *Id.* Critical to the court's determination was the fact that the plaintiff's hearing testimony had been an essential step in obtaining judicial approval for the prior settlement. *Id.*

Defendants also analogize the present case to *Strong v. Vestevich*, WL 22514550 (Mich. Ct. App. 2003). There, the plaintiff filed a malpractice action against her former divorce attorney, alleging that the attorney breached the standards of legal practice by failing to conduct

- 14 -

discovery regarding her ex-husbands assets and for failing to advise her not to accept her ex-husband's valuation of his dealership. *Id*. at *2. The plaintiff argued that, although she had waived her right to discovery on the record, her attorney had never discussed discovery with her prior to that testimony, she misunderstood the waiver, and that her former attorney should have dissuaded her from waiving discovery. *Id*. The Michigan Court of Appeals disagreed, and upheld the trial court's grant of summary disposition.   *Id*. at *3. The Court found that the record unequivocally showed that plaintiff "acknowledged both that defendant advised her regarding discovery and that she chose to forego further discovery instead relying on Rogin's valuation in reaching a settlement." *Id*.

In response, Plaintiff DeVolder argues that *Snyder* and *Strong* are distinguishable from the present case. Plaintiff claims that in both cases the plaintiffs testified under oath that they knew they had a right to conduct discovery but were knowingly waiving their rights to do so to enter into the settlement agreements. The plaintiffs then claimed that their attorneys had committed malpractice for failing to conduct additional discovery. DeVolder argues that this case is different because she was not actually informed of her rights—at least not on a Court record. DeVolder argues that, although she testified at the hearing where the divorce settlement was approved that she understood the effects of non-modifiable spousal support, she argues that she did not testify that she understood she could have potentially been awarded *modifiable* spousal support. In other words, DeVolder maintains that *Snyder* and *Strong* are distinguishable because the plaintiffs in those cases testified that they understood the rights that they were relinquishing whereas Plaintiff here did not.

**ii.**

- 15 -

Plaintiff DeVolder correctly explains that the difference between modifiable spousal support and non-modifiable support was not expressly addressed by the parties when the judgment of divorce was entered.[2]  Plaintiff also testified in her deposition in this matter that Defendant Lee did not explain the difference between modifiable and non-modifiable spousal support.  In his deposition, Defendant Lee could not specifically recall whether he reviewed the issue with Plaintiff DeVolder.  Therefore her claims regarding modifiable and non-modifiable support are not barred by judicial estoppel, and her claim that Defendant Lee had a duty to inform her about the nature of the spousal support she was receiving and that he breached that duty presents an unresolved issue of fact with respect to the first two elements of her claim.  *See* Pl. Compl. ¶¶ 13(o)-(p), (nn).

### iii.

Plaintiff DeVolder's claims that Defendants had a duty to obtain a more favorable settlement for her than they did is judicially estopped.  In her divorce action, DeVolder testified that she was satisfied with the division of assets and the spousal support she was receiving in the divorce, and that she understood that if she had gone to trial she could receive more or less than the settlement amount. DeVolder also testified that she had talked to both her attorney and her therapist about the consequences of going to trial, and that she thought it best to accept the settlement rather than go to trial.  DeVolder testified to understanding that settlement was a give and take process, and that although she did not get everything she wanted, she was comfortable with the settlement.   Accordingly, DeVolder's claims that Defendants were professionally negligent for failing to obtain a more favorable settlement for her are barred. *See* Pl. Compl. ¶¶

---

[2] Under Michigan law, modifiable spousal support can increase or decrease if there is a "change in circumstance" for either the payor or the recipient. Any judicial award of spousal support in Michigan is necessarily modifiable, but parties can agree or consent to spousal support that is non-modifiable. *See* Thomas L. Saxe et al., *Modifying Spousal Support*, INST. OF CONTINUING LEGAL EDUC. (2013).

13(q)-(u), (ii).  DeVolder therefore cannot claim Defendants' failure to generally obtain for her a more favorable settlement either as a breach of professional duty or as an injury in this action.

### B.

Defendants next argue that Plaintiff's allegations should be barred under a theory of collateral estoppel.  In Michigan, consent judgments are generally not to be given collateral estoppel effect.  *See Goldman v. Wexler*, 333 N.W.2d 121, 123 (Mich. Ct. App. 1983). "[A] judgment can be given collateral estoppel effect only as to those issues which were actually and necessarily adjudicated." *American Mut. Liability Ins. Co. v. Michigan Mut. Liability Co*., 235 N.W.2d 769, 776 (Mich. Ct. App. 1975).  There is no need to address this argument because Plaintiff DeVolder's claims that the settlement was generally insufficient are barred under the theory of judicial estoppel.

### C.

Third, Defendants argue that judgment in their favor is appropriate as to Plaintiff DeVolder's allegations relating to her alleged spousal abuse, assault and battery claims against her ex-husband.  Defendants argue that DeVolder cannot establish the first element of her prima facie malpractice claim: that an attorney client relationship existed with respect to those claims.  Plaintiff DeVolder agrees that there was no attorney client relationship with respect to those claims because Defendants did not agree to represent her with respect to those claims. *See* Pl. S.J. Resp. 14 ("Defendants are correct that an attorney-client relationship was never established regarding the tort action.").  There is thus no dispute as to any material fact in this regard.

Plaintiff contends that Defendants' malpractice does not arise from their representation, or lack thereof in these matters, but from the waiver contained in the Consent Judgment of Divorce. *Id*. In its relevant part, the divorce judgment provides that "any and all motions an all

matters existing in this divorce action prior to the entry of the Judgment of Divorce shall be hereby incorporated into this document and deemed waived unless specifically preserved herein."  ECF No. 29 Ex. 17, 7.  DeVolder thus argues that Defendants were negligent in drafting a consent judgment with language that waived any additional claims she might have against her ex-husband.

The Michigan Court of Appeals addressed a similar question in *Goldman v. Wexler*, 333 N.W.2d 121 (Mich. Ct. App. 1983).  There, following a divorce judgment, Plaintiff attempted to bring a tort action for battery against her ex-husband.  *Id*. at 743. The trial court concluded that the plaintiff's tort claim was barred by the prior divorce judgment.  *Id*. The Michigan Court of Appeals disagreed, finding that the divorce judgment did not preclude the plaintiff from bringing an action against her ex-husband for a tort that he allegedly committed during their marriage.  *Id*. Even though plaintiff had received at least partial compensation for the injuries she had suffered as a result of the alleged battery, the Court decided that the tort claim was neither barred by, nor merged into the divorce judgment. *Id*. at 748. The Court observed that if the prior judgment was intended to bar such claims, the parties could have explicitly stated that the release was intended to bar all claims that grew out of the marriage. *Id. See also Chabiaa v. Aljoris*, WL 555792 (Mich. Ct. App. 2012).

Under this rule, DeVolder's Consent Judgment of Divorce did not waive her tort claims against her ex-husband.  The release at issue only waives "matters existing in this divorce action." ECF No. 29 Ex. 17, 7.  It does not waive all claims that grew out of the marriage.  As a matter of law, DeVolder cannot show that Defendants waived her right to bring tort claims against her ex-husband.  She also concedes that no attorney-client relationship existed between her and Defendants with respect to her tort claims.  For these reasons, DeVolder's malpractice

allegations regarding her spousal abuse, assault and battery claims will be dismissed.  *See* Pl. Compl. ¶¶ 13(v)-(y).  DeVolder's theory that Defendants caused her injury in the form of a loss of valid tort claims will also be dismissed. *See* Pl. Compl. ¶ 15.  Plaintiff will not be allowed to allege that any such claims constitute either a breach of professional duty or an injury in this action.

### D.

Defendants also move for judgment on DeVolder's breach of professional duty allegations that Defendants fell below the standard of professional conduct in failing to properly communicate with DeVolder, failing to be prepared for trial, failing to go to trial, and failing to properly handle post-settlement matters. *See* Pl. Compl. ¶¶ 13(a), (h)-(m), (o)-(u), (z)-(gg), (ii), (ll)-(nn), (rr)-(vv).   Defendants contend that Plaintiff DeVolder cannot proceed on those malpractice theories as a matter of Michigan law.

"When a settlement is compelled by the mistakes of the plaintiff's attorney, the attorney may be held liable for causing the client to settle for less than a properly represented client would have accepted."  *Espinoza*, 472 N.W.2d at 23.  However, "[m]ere errors in judgment by a lawyer are generally not grounds for a malpractice action where the attorney acts in good faith and exercises reasonable care, skill, and diligence. Where an attorney acts in good faith and in honest belief that his acts and omissions are well founded in law and are in the best interest of his client, he is not answerable for mere errors in judgment."  *Simko v. Blake*, 532 N.W.2d 842, 847 (Mich. 1995).

In order to proceed in her malpractice claim against Defendants, DeVolder first has the burden to show that (1) Defendants either did not act in good faith or did not exercise reasonable care, skill, and diligence, and (2) that she would have been successful in her underlying suit but

for Defendants alleged malpractice. *See Colbert v. Conybeare Law Office*, 609 N.W.2d 208, 214-25 (Mich. Ct. App. 2000).

### i.

DeVolder does not allege that Defendants did not act in good faith. Thus DeVolder must carry her burden by showing that Defendants did not exercise reasonable care, skill, and diligence. Ordinarily, questions of standard of conduct, breach, and causation are for the jury, not the court, and the parties must offer expert testimony to assist the jury in making such factual determinations. *See Law Offices of Lawrence J Stockler, PC v Rose*, 436 NW2d 70 (Mich. Ct. App. 1989). "Where the absence of professional care is so manifest that within the common knowledge and experience of an ordinary layman it can be said that the defendant was careless, a plaintiff can maintain a malpractice action without offering expert testimony." *Id*. at 88.

Here, the parties have properly provided expert testimony, and the experts disagree as to whether Defendants' representation of DeVolder fell below the required standard of professional conduct. Both of Devolder's experts have testified that failing to explain to a client the difference between modifiable and non-modifiable support would constitute a breach of the standard of practice required of Michigan divorce attorneys. DeVolder's expert Attorney Tooman has also offered testimony that, based on her review of his file, Defendant Lee's lack of preparation for the divorce trial fell below the requisite standard of professional conduct. Defendants argue that Tooman's opinion in this regard is based on a review of the incorrect file. Defendants emphasize that even Plaintiff's second expert witness, Mr. Gugni, testified that he was "very impressed with Mr. Lee's file" and noted that Mr. Lee "did his homework like he should have done." Def.'s Mot. to Strike Ex. 1 at 42. However, the fact that Ms. Tooman has testified otherwise is sufficient to create a question of fact in this regard. As noted above,

"[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. DeVolder has thus satisfied her burden of creating questions of fact regarding the question of whether Defendants breached their standard of conduct by failing to properly communicate with DeVolder and failing to be prepared to go to trial.

**ii.**

In addition to showing that Defendants negligently fell below the professional standard of conduct, DeVolder must also satisfy her burden of demonstrating a legitimate question of fact concerning causation. In other words, she must furnish some evidence that, but for Defendants' malpractice, she would have been successful in the underlying suit. *See Charles Reinhart Co. v. Winiemko,* 513 N.W.2d 773, 775-76 (Mich. 1994); *Colbert,* 609 N.W.2d at 214-15. As explained by the Michigan Supreme Court:

> this suit within a suit concept has vitality only in a limited number of situations, such as where an attorney's negligence prevents the client from bringing a cause of action (such as where he allows the statute of limitations to run), where the attorney's failure to appear causes judgment to be entered against his client or where the attorney's negligence prevents an appeal from being perfected. This is so because the purpose of the suit-within-a-suit requirement is to insure that the damages claimed to result from the attorney's negligence are more than mere speculation.

*Coleman v. Gurwin*, 503 N.W.2d 435, 437 (Mich. 1993) (internal citations and quotations omitted). "A claim of malpractice further requires a showing of actual injury caused by the malpractice, not just the potential for injury." *Colbert*, 609 N.W.2d at 215. Causation issues that turn on questions of fact should be determined by a jury. *See Winiemko,* 513 N.W.2d at 777-83. Causation issues that turn on questions of law should be determined by a judge. *Id.*

- 21 -

As a matter of law Plaintiff DeVolder cannot proceed on her remaining malpractice claims. As explained above, she cannot claim an injury of loss of the tort claims she had against her ex-husband because Defendants did not agree to represent her on those claims and because those claims were not waived in the Consent Judgment. She also cannot claim an injury based on Defendants' failure to generally obtain a more favorable settlement since that claim is barred by her prior testimony at the divorce hearing and the doctrine judicial estoppel. Furthermore, in her deposition DeVolder disclaimed any emotional distress injuries resulting from Defendants' conduct, and thus she cannot claim emotional distress injuries in this action. *See* Def.'s S.J. Mot. Ex. 3 p. 167-168.

In addition, Judge Lauderbach testified that he likely would have awarded two to five years of spousal support in an amount "necessary to make up the income to cover the expenses," but that he would not have awarded any support to cover DeVolder's decision to receive out-of-network psychological care. *See* Def.'s S.J. Mot. Ex. 8 at 14, 26, 29-31; *Id.* at Ex. 11. DeVolder does not rebut this testimony or Judge Lauderbach's factual assertions. Consequently, DeVolder cannot claim that she would have received a monetary award allowing her to pay Doctor Powers but for Defendants' negligent representation. Nor can she claim uncovered medical and psychological care expenses related to her out-of-network expenses as an injury in this matter. *See* Pl. Compl. ¶ 15.

DeVolder also cannot allege an injury regarding any matter of which she has an available remedy. As explained in this Court's previous order on Defendants' motion to dismiss, ECF No. 15, where a plaintiff has an available remedy, the plaintiff has not suffered an injury that can give rise to a malpractice claim. *See Bourke v. Warren*, 325 N.W.2d 541 (1982). DeVolder thus cannot claim that she was injured by Defendants' handling of post-settlement matters because

- 22 -

the Judgment of Divorce expressly permits her to reopen the case to address any later-discovered issues. *See* Pl. Compl. ¶ 13(tt)-(uu).   For the same reason, DeVolder cannot allege that she was injured by Defendants' failure to initially seek a status quo or restraining order. *See* Compl. ¶ 13(a).

Finally, DeVolder cannot proceed on her claim that Defendants' representation of her caused her an injury in the form of her acceptance of non-modifiable support.  Although it is true that any judge's award of spousal support would have necessarily been modifiable, whether that would have been a better result for DeVolder is speculative. Although Defendants' failure to communicate with DeVolder regarding the difference between modifiable and non-modifiable support may have fallen below the professional standard of conduct, DeVolder cannot claim a real and concrete injury follows from that conduct.

This is not at odds with *Espinoza*, 472 N.W. 2d at 23. There, the Michigan Court of Appeals concluded that summary disposition was inappropriate where the "pleadings and the evidence were sufficient to at least raise an inference that the low mediation award and plaintiff's acceptance of that award were caused by defendants' malpractice." *Id*.  A jury would not need to speculate to determine that a higher mediation award would have been better than a lower mediation award.  Here, a jury would need to speculate that modifiable spousal support would have been better than non-modifiable spousal support.  DeVolder has produced no evidence that the presiding judge would have awarded her a higher, or even the same amount of modifiable alimony as the amount of non-modifiable alimony she actually received.  There is also no evidence that the judge would have actually modified the alimony award based on later changes of circumstances for either DeVolder or her former husband.  Any suggestion that modifiable income would have been a better outcome for DeVolder would require speculation.  Because

DeVolder cannot show that she would have had a better outcome but for Defendants' alleged malpractice, her claims will be dismissed as a matter of law.

**IV.**

It is therefore **ORDERED** that Defendants' Motion to Exclude Expert Witness Testimony of Attorney Rebecca Tooman, ECF No. 28 is **DENIED**.

It is further **ORDERED** that Defendants' Motion for Summary Judgment, ECF No. 29, is **GRANTED**.

It is further **ORDERED** that Plaintiff's Motion in Limine, ECF No. 37, and Defendants' Motion in Limine, ECF No. 38, are **DENIED AS MOOT**.

It is further **ORDERED** that Plaintiff DeVolder's Complaint, ECF No. 1, is **DISMISSED with prejudice**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: November 10, 2015

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 10, 2015.

s/Michael A. Sian
MICHAEL A. SIAN, Case Manager